**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

D'ALCAPONE A. MORRIS,

|  |  |  |
|---|---|---|
| Petitioner, | : | Case No. 3:25-cv-00388 |
| - vs - | | District Judge Michael J. Newman<br>Magistrate Judge Michael R. Merz |
| WARDEN,<br>Mansfield Correctional Institution, | | |
| | : | |
| Respondent. | | |

## REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner D'Alcapone Morris under 28 U.S.C. § 2254, is before the Court for decision on the merits on the Amended Petition (ECF No. 5), the State Court Record (ECF No. 10), the Return of Writ (ECF No. 11), and Petitioner's Reply (ECF No. 16).

**Litigation History**

On July 15, 2009, a Montgomery County grand jury indicted Petitioner Morris and co-defendant Michael Guy on eight counts surrounding the robbery from the person of Javon Buckman and shooting death of Richard Pogue (Indictment, State Court Record, ECF No. 10, Ex. 1). On April 23, 2010, a trial jury found Morris guilty on all counts against him in the indictment. *Id.* at Ex. 13. He was then sentenced to thirty-five years to life in prison. *Id.* atd Ex. 14.

1

Represented by new counsel, Morris appealed to the Ohio Court of Appeals for the Second District which affirmed the conviction. *State v. Morris*, 2012-Ohio-22 (Ohio App. 2nd Dist Jan. 6, 2012). Morris did not appeal further to the Ohio Supreme Court.

On September 10, 2015, Morris filed in the Common Pleas Court a motion for leave to file a delayed motion for new trial which the trial court denied. Morris appealed *pro se* to the Second District. Although that court appointed counsel, it eventually affirmed the trial court's dismissal. Morris did not appeal further to the Ohio Supreme Court.

On March 24, 2016, Morris, proceeding *pro se*, filed in the Common Pleas Court a petition to vacate or set aside judgment of conviction or sentence. The trial court denied the motion as untimely and Morris did not appeal. On September 19, 2017, Morris, *pro se*, filed a successive petition for post-conviction relief which the trial court denied as untimely, successive, and meritless. Although an attorney assumed prosecution of the appeal, the Second District affirmed. This time Morris appealed, but the Ohio Supreme Court declined to exercise jurisdiction.

In the Amended Petition, Morris pleads the following grounds for relief:

> **Ground One**: Brady Violation-Suppressed and False Autopsy Evidence Used at Trial.
>
> **Supporting Facts**: The prosecution failed to disclose material exculpatory evidence regarding the autopsy. The original autopsy report (June 25, 2009) documented no soot, stippling, thermal effect, or close-range characteristics, proving the gunshot was not fired at close contact. Months later, an amended autopsy report (November 12, 2009) reversed these findings after communication between the State and the coroner, without notifying the defense. The changes supported the State's theory but were scientifically false. The amended findings allowed the prosecution to argue "See attached page labeled 'Ground One-through five Supporting Facts.'"
> 1. The original autopsy report dated June 25, 2009, showed no soot, no stippling, no thermal effect, and a back-to-front bullet

2

pathway. These findings contradict the prosecution's theory of a close-range intentional shooting.

2. Months later, on November 12, 2009, an amended autopsy report was created that reversed key findings, including adding thermal effect and changing the bullet path. No scientific reason was provided for these changes.

3. During trial, the coroner admitted he did not review scene photographs before signing the original report, and that he changed findings only after the prosecution contacted him preparing [sic] for trial.

4. The defense did not receive the original findings, the reason for the changes, or the prosecutor-coroner communications at trial or direct appeal.

5. The jury only heard the amended version, not the original findings that supported accidental discharge.

6. The full factual basis of this claim was discovered only years later through public-records [sic] disclosures and transcript review.

**Ground Two**: Ineffective Assistance of Counsel

**Supporting Facts**:
1. Trial counsel asked only a brief question about the amended autopsy report and did not challenge the contradictions between the original and amended findings.

2. Counsel did not question the coroner about why key findings changed or why he signed the original report without reviewing the photos.

3. Counsel did not confront the coroner about communications with the prosecution that preceded the amended report.

4. Counsel did not present the original autopsy to the jury, so they never saw the findings that supported accident.

5. While Petitioner was testifying, the judge explained at sidebar how Petitioner's testimony could be used to support a conspiracy theory. Counsel did not object, request a limiting instruction, or move to strike.

6. Counsel did not protect Petitioner from incriminating testimony or intervene [sic] when the judge's statements shaped how the State questioned him.

7. Counsel did not effectively cross-examine key witnesses or develop evidence supporting Petitioner's defense.

8. These failures appear in the trial transcript and recordings.

**Ground Three**: Due Process Violation-Unfair Trial Proceedings

**Supporting Facts:** 1. During Petitioner's testimony, the judge made statements at the sidebar instructing counsel and prosecution [sic] how Petitioner's statements could be used for a conspiracy theory.

2. These statements influenced how the prosecution questioned Petitioner and how the defense proceeded.

3. Counsel did not object or request a limiting instruction.

4 The judge permitted replaying emotional evidence (911 call) despite its prejudicial effect.

5. The judge restricted the defense ability to present autopsy inconsistencies and context surrounding the shooting.

6. Petitioner was excluded from some sidebar discussions and jury-instruction decisions.

7. The cumulative effect of the judge's statements and rulings created a fundamentally unfair trial environment.

**Ground Four**: Judicial Bias/ Lack of Neutrality

**Supporting Facts:**

1. The judge's sidebar statements guided the prosecution's presentation and suggested how Petitioner's testimony should support a conspiracy theory.

2. The judge's involvement went beyond neutral case management and influenced strategy.

4

3. The judge made rulings favoring the prosecution and limiting the defense evidence.

4. The judge participated in discussions affecting how evidence would be framed for the jury.

5. The judge allowed emotional evidence to be replayed, increasing prejudice.

6. The petitioner was excluded from key discussions.

6. The judge's conduct created the appearance of aligning with the prosecution.

**Ground Five:** Actual Innocence/ Newly Discovered Evidence.

**Supporting Facts:**

1. The original autopsy findings (no soot, no thermal effect, not close-range) contradict the State's intentional shooting theory.

2. The amended autopsy reversed key findings and was created after discussions with the prosecution.

3. These changes were undisclosed and were presented at trial without explanation.

4. New evidence, including prosecutor-coroner emails and transcript admissions, shows the autopsy was altered in a way that affected the outcome.

5. Michael Guy's affidavit states the shooting was accidental.

6. Witness testimony was inconsistent and was not effectively challenged at trial.

7. Considering the original autopsy, corrected findings, new disclosures, and affidavits, no reasonable juror would have convicted Petitioner.

(ECF No. 5).

**Timeliness of the Petition**

Item 18 of the Standard Form for 2254 Petitions asks a petitioner to state why his petition is timely if it is filed more than twelve months after his conviction became final on direct appeal. Morris wrote:

> "Although the petitioner raised concerns about the autopsy discrepancies during his direct appeal, the appellate court dismissed the issue as a harmless 'clerical error. ' At that time, the petitioner did not have access to any of the suppressed communications between the prosecutor and the coroner, the coroner's internal notes, or the later transcript admissions revealing that the autopsy was substantively altered-not corrected-and that the original qunshot-range findings were scientifically inaccurate. These materials were withheld by the State and were not available to the petitioner at trial, on direct appeal, or during initial post-conviction review. The true factual basis for this claim only became discoverable years later through public records disclosures and full transcript review. That review revealed: (1) the autopsy was changed after discussions with prosecutors; (2) the coroner admitted significant mistakes; (3) the amended report supported a theory unsupported by forensic evidence; and (4) these facts were never presented to the defense or the jury. Because the State prevented access to this material evidence and the appellate court mischaracterized the autopsy changes, the petitioner could not have reasonably discovered these facts earlier despite raising the issue.
>
> Once the suppressed evidence and transcript recordings were uncovered, the petitioner acted diligently in pursuing relief. Accordingly, the one-year statute of limitations under 28 U. S.C. §2244(d) does not bar this petition because: (a) State action created the impediment to timely filing (§2244(d)(1)(B)); and (b) the factual predicate of the claims could not have been discovered earlier with due diligence (§2244(d)(1)(D))."

(Amended Petition, ECF No. 5, PageID 82-83).

A statute of limitations for habeas corpus petitions under 28 U.S.C. § 2254 was first enacted in the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA") and is codified at 28 U.S.C. § 2244(d) which provides:

6

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of —
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

In the Return of Writ, Respondent asserts the original Petition[1] was untimely filed when the time is calculated under § 2244(d)(1)(A).  Calculating the limitations date under that provision, the conviction became final February 20, 2012, when Morris did not appeal to the Ohio Supreme Court on direct review by that deadline, forty-five days after his conviction was affirmed by the Second District.  Although a properly filed collateral attack on the conviction will toll the statute of limitations, Morris filed no such attack until after the statute had expired.  Calculated under 28 U.S.C. § 2244(d)(1)(A), the limitations period expired February 20, 2013.  The original Petition here was not filed until November 13, 2025, more than twelve years later.

---

[1] The original Petition was not signed by Petitioner, which led to the Court to order an amended petition to comply with Fed.R.Civ.P. 11 (Order, ECF No. 4).

Petitioner responds that Respondent's arguments

> fail because the factual basis of Petitioner's claims was not reasonably discoverable earlier and because Petitioner exercised continuous diligence in attempting to obtain the relevant materials. . . . Respondent's own filings further confirm that Petitioner repeatedly sought transcripts and records over a period of years. These admissions establish diligence and undermine Respondent's assertion that Petitioner delayed.

(Reply, ECF No. 16, PageID 1776).

It appears from the Reply that Morris is claiming the benefit of § 2244(d)(1)(D) such that the statute would run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." In the Reply, Petitioner claims that he "began seeking records in approximately 2015." (ECF No. 16, PageID 1778). Petitioner provides no documentation of how he conducted this search, but even January 1, 2015, is almost three years after his conviction became final on February 20, 2012. Waiting three years to even start the search does not show due diligence.

Morris also claims the benefit of the actual innocence exception to the statute of limitations recognized by the Supreme Court in *McQuiggin v. Perkins*, 569 U.S. 383 (2013). Under *McQuiggin*, failure to file within the statute will be excused only if the petitioner presents new evidence that persuades the habeas court he is factually innocent:

> "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U. S., at 329, 115 S. Ct. 851, 130 L. Ed. 2d 808; see *House*, 547 U. S., at 538, 126 S. Ct. 2064, 165 L. Ed. 2d. 1 (emphasizing that the *Schlup* standard is "demanding" and seldom met). And in making an assessment of the kind *Schlup* envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. *Schlup*, 513 U. S., at 332, 115 S. Ct. 851, 130 L. Ed. 2d. 808.

*Id.* at 386-87. *Schlup* describes the quality of the evidence required to establish actual innocence:

> To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Schlup v. Delo*, 513 U.S. 298, 324 (1995)." *See also Souter v. Jones,* 395 F.3d 577, 590 (6th Cir. 2005).  Morris has presented no new evidence of the type required to satisfy the *McQuiggin* exception.

Because Morris filed his Petition well after the statute of limitations expired, the Petition should be dismissed with prejudice on that basis.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

March 27, 2026.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received.  Such

objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. #