# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

D'ALCAPONE A. MORRIS,

|  |  |  |
|---|---|---|
| Petitioner, | : | Case No. 3:25-cv-00388 |
| - vs - | | District Judge Michael J. Newman<br>Magistrate Judge Michael R. Merz |
| WARDEN, | | |
| Mansfield Correctional Institution, | | |
| | : | |
| Respondent. | | |

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner D'Alcapone Morris under 28 U.S.C. § 2254, is before the Court on Petitioner's Objections (ECF No. 18) to the Magistrate Judge's Report and Recommendations recommending dismissal of the Petition (the "Report," ECF No. 17). District Judge Newman has recommitted the case for reconsideration in light of the Objections (ECF No. 19).

The Report recommends that the Petition be dismissed as untimely – barred by the statute of limitations codified at 28 U.S.C. §2244. The Report details the history of this litigation as follows:

> On July 15, **2009**, a Montgomery County grand jury indicted Petitioner Morris and co-defendant Michael Guy on eight counts surrounding the robbery from the person of Javon Buckman and shooting death of Richard Pogue (Indictment, State Court Record,

1

ECF No. 10, Ex. 1).  On April 23, **2010**, a trial jury found Morris guilty on all counts against him in the indictment. *Id.* at Ex. 13.  He was then sentenced to thirty-five years to life in prison. *Id.* at Ex. 14.

Represented by new counsel, Morris appealed to the Ohio Court of Appeals for the Second District which affirmed the conviction. *State v. Morris*, 2012-Ohio-22 (Ohio App. 2nd Dist Jan. 6, **2012**).  Morris did not appeal further to the Ohio Supreme Court.

On September 10, **2015**, Morris filed in the Common Pleas Court a motion for leave to file a delayed motion for new trial which the trial court denied.  Morris appealed *pro se* to the Second District. Although that court appointed counsel, it eventually affirmed the trial court's dismissal.  Morris did not appeal further to the Ohio Supreme Court.

On March 24, **2016**, Morris, proceeding *pro se*, filed in the Common Pleas Court a petition to vacate or set aside judgment of conviction or sentence.  The trial court denied the motion as untimely and Morris did not appeal.  On September 19, **2017**, Morris, *pro se*, filed a successive petition for post-conviction relief which the trial court denied as untimely, successive, and meritless.  Although an attorney assumed prosecution of the appeal, the Second District affirmed. This time Morris appealed, but the Ohio Supreme Court declined to exercise jurisdiction.

(Report, ECF No. 17, PageID 1846-47; **emphasis of dates added**).

In the Return of Writ, Respondent calculated the limitations date as one year from the date the conviction became final on direct appeal, to wit, the last date Morris could have filed a direct to the Ohio Supreme Court, February 20, 2012.

In the Petition Morris had claimed his filing was timely under § 2244(d)(1)(B) because the State impeded his filing or under § 2244(d)(1)(D) because the factual predicate of his claim could not have been discovered earlier (Amended Petition, ECF No. 5, PageID 82-83).  The Standard Form for § 2254 Petitions asks a petitioner to state why his petition is timely if it is filed more than twelve months after his conviction became final on direct appeal.  Morris wrote:

"Although the petitioner raised concerns about the autopsy discrepancies during his direct appeal, the appellate court dismissed

2

the issue as a harmless 'clerical error. ' At that time, the petitioner did not have access to any of the suppressed communications between the prosecutor and the coroner, the coroner's internal notes, or the later transcript admissions revealing that the autopsy was substantively altered-not corrected-and that the original gunshot-range findings were scientifically inaccurate. These materials were withheld by the State and were not available to the petitioner at trial, on direct appeal, or during initial post-conviction review. The true factual basis for this claim only became discoverable years later through public records disclosures and full transcript review. That review revealed: (1) the autopsy was changed after discussions with prosecutors; (2) the coroner admitted significant mistakes; (3) the amended report supported a theory unsupported by forensic evidence; and (4) these facts were never presented to the defense or the jury. Because the State prevented access to this material evidence and the appellate court mischaracterized the autopsy changes, the petitioner could not have reasonably discovered these facts earlier despite raising the issue.

Once the suppressed evidence and transcript recordings were uncovered, the petitioner acted diligently in pursuing relief. Accordingly, the one-year statute of limitations under 28 U.S.C. §2244(d) does not bar this petition because: (a) State action created the impediment to timely filing (§2244(d)(1)(B)); and (b) the factual predicate of the claims could not have been discovered earlier with due diligence (§2244(d)(1)(D))."

(Amended Petition, ECF No. 5, PageID 82-83).

A statute of limitations for habeas corpus petitions under 28 U.S.C. § 2254 was first enacted in the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA") and is codified at 28 U.S.C. § 2244(d) which provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of —
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or

laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

In the Return of Writ, Respondent asserts the original Petition[1] was untimely filed when the time is calculated under § 2244(d)(1)(A). Calculating the limitations date under that provision, the conviction became final February 20, 2012, when Morris did not appeal to the Ohio Supreme Court on direct review by that deadline, forty-five days after his conviction was affirmed by the Second District. Although a properly filed collateral attack on the conviction will toll the statute of limitations, Morris filed no such attack until after the statute had expired. Calculated under 28 U.S.C. § 2244(d)(1)(A), the limitations period expired February 20, 2013. The original Petition here was not filed until November 13, 2025, more than twelve years later.

Petitioner responds that Respondent's arguments

fail because the factual basis of Petitioner's claims was not reasonably discoverable earlier and because Petitioner exercised continuous diligence in attempting to obtain the relevant materials. . . . Respondent's own filings further confirm that Petitioner repeatedly sought transcripts and records over a period of years. These admissions establish diligence and undermine Respondent's assertion that Petitioner delayed.

---

[1] The original Petition was not signed by Petitioner, which led to the Court to order an amended petition to comply with Fed.R.Civ.P. 11 (Order, ECF No. 4).

(Reply, ECF No. 16, PageID 1776).

It appeared from the Reply that Morris is claiming the benefit of § 2244(d)(1)(D) such that

the statute would run from "the date on which the factual predicate of the claim or claims presented

could have been discovered through the exercise of due diligence."  The Report found that Morris

had not been diligent in seeking relevant records.  Morris objects

> That finding is contradicted by the official court record.
> Attached as Exhibits A-D are official public docket records from the
> Montgomery County Court of Appeals showing that Petitioner:
> . filed a direct appeal in May 2010;
> . filed additional appellate actions in December 2015; and
> . continued litigation through January 2018.

(Objections, ECF No. 18, PageID 1858).  Morris does not explain why having motions

intermittently pending over an eight-year period constitutes due diligence.  He himself told the

Court that he "began seeking records in approximately 2015."  (ECF No. 16, PageID 1778).  The

Report concluded "Petitioner provides no documentation of how he conducted this search, but

even January 1, 2015, is almost three years after his conviction became final on February 20, 2012.

Waiting three years to even start the search does not show due diligence."  (ECF No. 17, PageID

1853).  Morris does not correct that omission in his Objections.

Morris also objects that the Report does not address his state-impediment-to-filing claim

(ECF No. 18, PageID 1860).  He writes:

> The record reflects that Petitioner sought transcripts and records
> through court filings and other efforts, but encountered repeated
> denials and limitations in obtaining materials while incarcerated.
> Petitioner later obtained key materials only through continued
> efforts, public records requests, and outside assistance.
>
> These facts are relevant to whether state action affected Petitioner's
> ability to obtain the factual basis of his claims.

*Id.*  These assertions are completely uncorroborated by any record references or even descriptions

of Morris's efforts or the state actions in impeding him. Where does the record reflect Morris sought transcripts?  Where are copies of the court filings he asserts exist?  A litigant does not prove facts by asserting that they do.

Morris objects that "[t]he Report [misapplies 28 U.S.C. § 2244(d)(1)(D) because it] focuses on when Petitioner began seeking records, rather than when the factual basis of the claims became discoverable" (Objections, ECF No. 18, PageID 1861).  He continues:

> Petitioner's claims rely on information that was not reasonably discoverable earlier, including:
> . materials relating to the amended autopsy and the circumstances surrounding it;
> . materials later obtained through public records requests and investigation; and
> . information revealed through the complete trial transcript.
> Prior to obtaining these materials, Petitioner possessed only incomplete information and could not establish the factual basis of his claims.

*Id.*  This objection has the time obligations upside down.  The key question is not when a habeas petitioner actually discovered the factual predicate of his claims, but when he could have done so if he had been duly diligent.

The Report rejected Morris's claim that his actual innocence excused his untimely filing under the holding in *McQuiggin v. Perkins*, 569 U.S. 383 (2013).  Morris objects

> That conclusion does not fully account for the record.
>
> Petitioner has identified evidence including:
> . differences between the original and amended autopsy findings;
> . an affidavit from Michael Guy;
> . additional materials obtained after earlier proceedings; and
> . information derived from the full trial transcript.
>
> This evidence was not fully available or developed at the time of trial or earlier proceedings.

(Objections, ECF No. 18, PageID 1862).  Just repeating conclusory words proves nothing.

Obviously whatever was included in the "full trial transcript" was heard by the jury that voted for conviction and does not consist of "new evidence."  There is no affidavit from co-defendant Michael Guy among the materials with which Petitioner sought to expand the record (ECF No. 13).  The Magistrate Judge again concludes the materials Petitioner has submitted do not meet the standard for proving actual innocence adopted in *McQuiggin*.

**Conclusion**

Having reconsidered the case in light of the Objections, the Magistrate Judge adheres to his earlier conclusion that the Petition should be dismissed with prejudice as barred by the statute of limitations.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

April 13, 2026.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.

7